IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| SABRINA B. HOLCOMB, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 5:12-cv-424 (MTT) (CHW) |
| | : | |
| CAROLYN W. COLVIN, | : | Social Security Appeal |
| Acting Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## REPORT AND RECOMMENDATION

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff Sabrina B. Holcomb's application for benefits. 42 U.S.C. § 405(g). Because the Commissioner's decision is based on proper legal standards and is supported by substantial evidence, it is **RECOMMENDED** that the decision below be **AFFIRMED**.

## ADMINISTRATIVE HISTORY

Plaintiff Sabrina B. Holcomb applied for Title II benefits on October 22, 2008, alleging an onset date of October 29, 1998. (R. 13). Because her "date last insured" ("DLI") was June 30, 2001, Plaintiff would have to show that she became disabled on or before June 30, 2001 to be eligible to receive benefits.[1] (Doc. 13, p. 3).

In her Title II application, Plaintiff claimed to suffer from "psychiatric problems and other medical conditions."[2] (Doc. 13, p. 4). Her application was denied initially in December

---

[1] *See* 42 U.S.C. § 423. Only "insured" individuals are eligible for disability insurance benefits. 42 U.S.C. § 423(a). With certain exceptions, "an individual is insured for disability purposes in any month in which he has at least 20 quarters of coverage during the 40 quarters period ending with the quarter in which such month occurs." *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).
[2] In her brief, Plaintiff states that "for the purpose of this appeal, [she] will focus on evidence relating to her psychiatric condition." (Doc. 13, p. 4).

1

2008, and on reconsideration in January 2010, and she subsequently requested a hearing before an ALJ. (R. 13).

Prior to Plaintiff's administrative hearing, her treating psychiatrist, Dr. Ali Ahmadi, submitted a November 2010 opinion letter indicating that Plaintiff "ha[d] ongoing psychiatric symptoms that would be a serious barrier to maintaining gainful employment," and that Plaintiff's "symptomatology, and accompanying level of limitation . . . ha[d] been present since at least January 2000, and certainly prior to the end of June, 2001." (R. 551-52). However, Dr. Ahmadi did not begin treating Plaintiff until September 2002, over a year after her DLI, and other than Dr. Ahmadi's letter, there is little evidence in the record regarding Plaintiff's mental condition during the relevant period. (Doc. 14, p. 6).

In his unfavorable decision, the ALJ considered Dr. Ahmadi's letter but gave it only "some weight" because it "did not address [Plaintiff's] substance abuse problems [or] acknowledge the fact that [Plaintiff] demonstrated periods of stability." (R. 24). The ALJ also noted that "[Dr. Ahmadi's] records from September 30, 2002 to January 12, 2010 fail to establish any significant non-exertional or mental limitations prior to the expiration of the claimant's insured status on June 30, 2001." (R. 23). As a result, the ALJ found that Plaintiff had not been under a disability at any time from October 29, 1998, through June 30, 2001. (R. 26). The Appeals Council affirmed this finding, denying Plaintiff's request for review on August 22, 2012. (R. 1).

**STANDARD OF REVIEW**

District courts have a limited role in reviewing claims brought under the Social Security Act. Review of the Commissioner's decision is restricted to a determination of whether the decision is supported by substantial evidence and whether the correct legal standards were

applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Consequently, a court's role in reviewing claims brought under the Social Security Act is quite narrow.

District courts must defer to the Commissioner's factual findings. Courts may not decide facts, re-weigh evidence, nor substitute their judgment for that of the Commissioner. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). *See also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986). Courts must scrutinize the entire administrative record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth*, 703 F.2d at 1239. However, even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if it is supported by substantial evidence. *Id.*

The Commissioner's findings of law are given less deference. Courts must determine if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980). Courts must therefore consider any questions of law *de novo*, and "no . . . presumption of validity attaches to the [Commissioner's] conclusions of law, including determinations of the proper standards to be applied in reviewing claims." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982). The Commissioner's failure to apply the correct legal standards or to provide a sufficient factual basis for the court to determine that the correct legal standards have been followed is grounds for reversal. *Id.*

**EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity due to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of a least twelve months. 42 U.S.C. § 423(d)(1)(A).

When analyzing the issue of disability, the Commissioner must follow a five-step sequential evaluation procedure. 20 C.F.R. § 404.1520, Appendix 1, Part 404. First, the Commissioner determines whether or not the claimant is currently engaged in substantial gainful activity. Second, upon a finding that the claimant is not working, the Commissioner determines whether the claimant has any impairment that prevents the performance of basic work activities. Next, if the existence of such impairments has been found, the Commissioner determines whether the impairment(s) meets or medically equals the severity of one or more of the specified impairments listed in Appendix 1 of Part 404 of the regulations. If the claimant's impairments do not meet or medically equal a listed impairment, the Commissioner must evaluate the claimant's residual functional capacity (RFC) for work. Fourth, using the claimant's RFC, the Commissioner determines whether the claimant is able to perform the physical and mental demands of his past work despite the impairments. Finally, and only when it has been determined that the claimant is unable to perform his or her past work, the Commissioner must determine whether there are sufficient numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and past work experience.

**ANALYSIS**

The Commissioner's decision must be affirmed because the determination that Plaintiff was "not disabled" was based on proper legal standards and supported by substantial evidence.

Plaintiff contests the Commissioner's decision on two grounds. First, Plaintiff argues that the ALJ failed to comply with SSR 83-20. (Doc. 13, p. 9). Second, Plaintiff argues that the ALJ improperly discounted the testimony of Dr. Ahmadi, her treating psychiatrist. (Doc. 13, p. 11). As discussed below, SSR 83-20 is not applicable to Plaintiff's case because the ALJ did not find that Plaintiff was "disabled." In addition, the ALJ established sufficient "good cause" to discount Dr. Ahmadi's opinion, and none of Plaintiff's claims of legal error are persuasive. Therefore, there is no basis to disturb the decision below.

## THE ALJ'S FINDINGS

Following the five-step sequential evaluation procedure,[3] the ALJ issued an unfavorable decision on February 4, 2011. (R. 13-26). At <u>step one</u>, the ALJ found that Plaintiff had not engaged in substantial gainful activity "during the period from her alleged onset date of October 29, 1998 through her [DLI] of June 30, 2001." (R. 16). At <u>step two</u>, the ALJ found that Plaintiff "had the following severe impairments: [h]istory of brain tumor with right hearing loss; and, [h]istory of [h]ysterectomy." (R. 16). At <u>step three</u>, the ALJ found that Plaintiff's impairments did not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17). Therefore, the ALJ assessed Plaintiff's Residual Functional Capacity ("RFC") and found that Plaintiff could perform, through her DLI:

> [A] reduced range of simple, routine, light work with frequent but not constant concentration; in a low stress, slower pace work environment that required only neutral contact with the public and no intense customer service contact; with no work in an environment with concentrated exposure to cold, heat, humidity or pulmonary irritants; and, she should not perform a job where hearing discrimination is an essential job function. (R. 18).

Based on this RFC finding, the ALJ found, at <u>step four</u>, that Plaintiff could not perform any of her past relevant work through her DLI. (R. 25). Nevertheless, at <u>step five</u>, the ALJ found

---

[3] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

that Plaintiff could have performed "other work" existing in significant numbers in the national economy. (*Id.*). Therefore, the ALJ found that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from October 29, 1998, [Plaintiff's] alleged onset date, through June 30, 2001, [Plaintiff's DLI]." (R. 26).

## FAILURE TO COMPLY WITH SSR 83-20

Plaintiff first argues that the ALJ failed to comply with SSR 83-20, which, according to Plaintiff, "sets forth specific procedures" and requires certain kinds of information when reaching a decision on a remote DLI. (Doc. 13, pp. 9-10, 15). SSR 83-20 provides, in relevant part:

Precise Evidence Not Available--Need for Inferences

In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

If reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in file and additional relevant medical evidence is not available, it may be necessary to explore other sources of documentation. Information may be obtained from family members, friends, and former employers to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition. However, before contacting these people, the claimant's permission must be obtained. The impact of lay evidence on the decision of onset will be limited to the degree it is not contrary to the medical evidence of

record. (In mental impairment cases, see SSR 83-15, PPS-96, Titles II and XVI, Evaluation of Chronic Mental Impairments.)

SSR 83-20 ("Titles II and XVI: Onset of Disability").

It is difficult to determine precisely what portion of SSR 83-20 Plaintiff believes the ALJ failed to comply with, or why.[4] Plaintiff's most discernible claim is that the ALJ failed to summon a "medial advisor" to help infer the date of onset of disability. (Doc. 13, pp. 9, 15). Eleventh Circuit case law indicates, however, that where a claimant is found "not disabled," the ALJ need not infer an onset date of disability. *Klawinski v. Commissioner of Social Security*, 391 Fed. Appx. 772, 776 (11th Cir. 2010) (holding that SSR 83-20 only required the ALJ to obtain a medical expert in certain instances to determine a disability onset date after a finding of disability); *see also Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). Because the ALJ here found that Plaintiff was "not disabled" from October 29, 1998, through June 30, 2001, SSR 83-20 is not applicable to her case.

### THE MEDICAL OPINION OF DR. ALI AHMADI

In November 2010, Dr. Ali Ahmadi, Plaintiff's treating psychiatrist, submitted an opinion letter claiming that Plaintiff "ha[d] ongoing psychiatric symptoms that would be a serious barrier to maintaining gainful employment," and that Plaintiff's "level of symptomatology, and accompanying level of limitation, including an inability to sustain any type of full-time work . . . ha[d] been present since at least January 2000, and certainly prior to the end of June, 2001." (R. 551-52).

---

[4] For example, Plaintiff appears to argue that the ALJ failed to obtain information from family members, but then claims that "The ALJ was . . . provided with testimony from [Plaintiff] **and her husband** in order to provide additional information regarding [Plaintiff's] functioning . . . at the time of her DLI." (Doc. 13, p. 10). Plaintiff provides no explanation as to why the testimony of her husband was insufficient to satisfy SSR 83-20.

The ALJ considered Dr. Ahmadi's opinion letter but gave it only "some weight." (R. 24). According to the ALJ, Dr. Ahmadi "did not address claimant's substance abuse problems [or] acknowledge the fact that the claimant demonstrated periods of stability with treatment and medication." (R. 24). The ALJ also noted that "[Dr. Ahmadi's] records from September 30, 2002 to January 12, 2010 fail[ed] to establish any significant non-exertional or mental limitations prior to the expiration of the claimant's insured status on June 30, 2001." (R. 23).

Plaintiff now argues, in essence, that the ALJ did not have "good cause" to discount Dr. Ahmadi's opinion letter. *See, e.g., Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) ("The opinion of a treating physician . . . must be given substantial or considerable weight unless good cause is shown to the contrary"). Although the ALJ may have overlooked language in Dr. Ahmadi's letter discussing Plaintiff's periods of stability, and although the ALJ perhaps improperly discounted Dr. Ahmadi's opinion for failing to address Plaintiff's history of substance abuse,[5] the ALJ's decision as a whole is supported by substantial evidence and therefore should be affirmed. *See Miller v. Barnhart*, 182 Fed. Appx. 959, 964 (11th Cir. 2006) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) ("[W]hen an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand").

The record adequately supports the ALJ's determination that Dr. Ahmadi's treatment notes from September 2002 through January 2010 "fail[ed] to establish any significant mental

---

[5] Eleventh Circuit case law suggests that an ALJ should consider evidence of a claimant's substance abuse at step three of the evaluation process. *Sanchez v. Commissioner of Social Security*, 507 Fed. Appx. 855, 857-58 (2013). If the ALJ determines at step three that a claimant is disabled, but also makes a finding that substance abuse is involved, the ALJ must determine whether the substance abuse is a contributing factor material to the determination of disability. *Id* at 857. This determination requires the ALJ to consider "whether the claimant would still qualify as disabled if she stopped using drugs or alcohol." *Id.* (citing 20 C.F.R. §§ 404.1535, 416.935). Because the ALJ determined that Plaintiff was not disabled, the question of substance abuse is not relevant.

8

limitations prior to . . . June 30, 2001," Plaintiff's DLI. (R. 23). For example, in his treatment notes dating from 2002 to 2003, Dr. Ahmadi described Plaintiff as:

- "comfortable and calm" during an interview (R. 462);
- "appropriately dressed and groomed" with a "level" mood (R. 460);
- "slightly depressed but . . . doing well otherwise" (R. 459);
- "doing well" with "few," "mild" depressed states (R. 458);
- "doing better overall and improving her quality of life" (R. 457); and
- "doing well and . . . happy with her life" (R. 454).

These consistently mild symptoms do not support a finding of "disabled" due to mental impairments during the relevant time period. *See* Phillips, 357 F.3d at 1241 ("good cause exists when the . . . treating [source's] opinion was conclusory or inconsistent with [his] own medical records"). Later records from 2004 to 2010 indicate increased episodes of depression, but also reveal findings that Plaintiff:

- had "no serious mental status abnormalities" (R. 447);
- was "euthymic" in mood with "no signs of depression" (R. 445);
- "denie[d] any psychiatric problems or symptoms" (R. 443);
- was "doing better" (R. 440); and
- showed "no signs of depression" and "no signs of thought disorder" (R. 437).

Moreover, to the extent that Dr. Ahmadi's later treatment notes indicate worsening symptoms, these findings support the ALJ's determination that Plaintiff "may well be . . . clinically depressed now," as opposed to during the relevant time period. (R. 24).

### COMPLIANCE WITH OTHER REGULATIONS AND RULES

In addition to her argument that the ALJ lacked "good cause," Plaintiff also argues that the ALJ committed a number of legal or procedural errors in assessing Dr. Ahmadi's November 2010 opinion letter. As discussed below, these allegations are groundless.

I. <u>20 CFR § 404.1527(c)(3)</u>

Plaintiff first cites § 404.1527(c)(3), which Plaintiff contends "makes clear that the ALJ has an obligation to recontact . . . treating sources where evidence is not sufficient to decide the issue of disability." (Doc. 13, p. 12). Section 404.1527(c)(3) provides:

> Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

Plaintiff fails to explain how the cited provision supports her argument, and no explanation is apparent. Indeed, because Dr. Ahmadi first saw Plaintiff on September 30, 2002, over one year after the relevant disability period of October 29, 1998 to June 30, 2001, § 404.1527(c)(3) appears to support the ALJ's decision to discount Dr. Ahmadi's opinion letter.

II. <u>20 C.F.R. § 404.1535</u>

Plaintiff next cites 20 C.F.R. § 404.1535, and argues that it "requires [ALJs] to determine i[f] substance abuse is material to the issue of disability." (Doc. 13, pp. 13-14). Section 404.1535 reads, in relevant part:

> (a) General. **If we find that you are disabled** . . . we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability. (emphasis added).

Because the ALJ did not find that Plaintiff was "disabled," he was not required to determine whether Plaintiff's history of substance abuse was material. In other words, neither Plaintiff's substance abuse nor § 404.1535 are relevant to the resolution of Plaintiff's case or to the evaluation of Dr. Ahmadi's opinion letter.

III. SSR 96-2p and SSR 96-5p[6]

Last, Plaintiff cites Social Security Rules 96-2p[7] and 96-5p,[8] and argues that the ALJ was "legally required" to solicit additional information from Dr. Ahmadi. Plaintiff cites two similar passages from the two rules:

> SSR 96-2p: "[I]n some instances, additional development required by a case—for example, to obtain more evidence or to clarify reporting clinical signs or laboratory findings—may provide the requisite support for a treating source's medical opinion that at first appeared to be lacking . . . .
>
> SSR 96-5p: "Requirements for Recontacting Treating Sources." Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification."

Plaintiff's argument relies on the premise that the ALJ found Dr. Ahmadi's opinion "inconsistent or insufficient." (Doc. 15, p. 8). The record contradicts this premise. At the time of his unfavorable decision, the ALJ had before him Dr. Ahmadi's entire body of treatment notes dating from September 30, 2002—the day Dr. Ahmadi first saw Plaintiff—through May 6, 2010. (R. 411-467, 503-507). This evidence was "adequate" to determine the basis of Dr. Ahmadi's November 2010 opinion letter. *See Couch v. Astrue*, 267 Fed. Appx. 853, 855 (11th Cir. 2008) ("Medical sources should be recontacted when the evidence received from that source is inadequate to determine whether the claimant is disabled"). Therefore, the ALJ properly discounted Dr. Ahmadi's opinion letter without requesting further evidence from Dr. Ahmadi.

---

[6] Social Security Rulings are not binding on federal courts, but they are entitled to deference. *Russell v. Astrue*, 742 F.Supp.2d 1355, 1376 n.20 (11th Cir. 2010).
[7] "Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions."
[8] "Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner."

## **CONCLUSION**

After careful consideration of the record, it is clear that the ALJ's decision was based on proper legal standards and is supported by substantial evidence. SSR 83-20 is not applicable to Plaintiff's case, and the ALJ properly discounted the opinion of Dr. Ahmadi based on the evidence before him. Accordingly, **IT IS HEREBY RECOMMENDED** that the Commissioner's decision below be **AFFIRMED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 25th day of October, 2013.

                                              s/ Charles H. Weigle_____
                                              Charles H. Weigle
                                              United States Magistrate Judge